Filed 7/27/16  P. v. Xum CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B265306 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA431377) |
| v. | |
| MIGUEL XUM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Henry J. Hall, Judge.  Affirmed.

George W. Taylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Miguel Xum (defendant) of attempted murder in violation of Penal Code section 187, subdivision (a) and section 664.[1] The jury also found true the allegations that defendant personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b) and that he personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). The trial court sentenced defendant to a total of nine years in state prison.

Defendant contends his conviction must be reversed because the trial court failed to give the jury a self-defense instruction. Defendant further contends the court abused its discretion under Evidence Code section 352 by admitting the weapons into evidence.

Since substantial evidence did not support instructing the jury on self-defense and the admission of weapons into evidence was not an abuse of discretion, we affirm the judgment.

## BACKGROUND

On November 6, 2014, defendant lived in an apartment with the victim, Francisco Sac (Sac) and with Sac's brothers Manuel and Antonio.[2] That night, defendant and Sac went to McArthur Park, approximately three blocks from their apartment, and drank beer. They eventually headed home.

As the two men approached their apartment, defendant suddenly ran off. He later emerged between some parked cars with his hands behind his back. Defendant had an angry expression on his face but Sac did not think defendant was angry at him. The two men had a good relationship and they had not argued or fought. Defendant said "I'm going to kill you" and revealed that he had a knife and a pitchfork in his hands. Sac recognized both the knife and pitchfork as kitchen implements he and his brothers used in their apartment when cooking. The knife was approximately 12 and a half inches long

---

[1]     All further statutory references are to the Penal Code, unless stated otherwise.

[2]     Because Sac's brothers share his last name, we refer to the brothers by their first names to avoid confusion.

2

from the tip of the blade to the bottom of the handle. The pitchfork was 11 and a half inches long.

Sac asked "What is going on? -- We're friends. What's happening?" Defendant did not respond but began swinging the knife and pitchfork toward Sac. Sac tried to flee, but defendant caught him and stabbed him in the abdomen. Defendant left the scene. Sac used his cell phone to call his brother Antonio to tell him that he had been stabbed by defendant. Sac then lost consciousness. He regained consciousness 15 days later in the hospital, where he remained from November 2014 through January 2015. During that time, Sac underwent four surgeries and required several blood transfusions. The attack left him with a scar that ran from his sternum to below his belt line and two smaller scars to the right. He also sustained injuries to his thumb and the inside of his right arm.

Responding officers found Sac lying in a pool of blood near the sidewalk on Carondelet Street. Sac's intestines were protruding from an eight- or nine-inch wound in his abdomen. The officers recovered a knife and pitchfork near a gutter. They arrested defendant, who was staggering, dazed, and confused, approximately a quarter of a mile away. He appeared to be intoxicated but uninjured.

Three days after the attack, defendant told detectives that he and Sac drank beer in the park, returned home, and had an argument. Defendant said he was intoxicated and did not remember much about the argument. Defendant said Sac kicked him in the face. Defendant then went to the kitchen, retrieved a knife, and used the knife to stab Sac in the stomach. Defendant stated that when he realized what he had done, he felt bad. The interviewing detective did not observe any bruises on defendant's face.

## DISCUSSION

### I. Alleged instructional error

At the close of evidence, defense counsel requested a self-defense instruction based on defendant's statement to the detectives that Sac had kicked him in the face. The trial court denied the request on the ground that the evidence did not support the instruction. Defendant contends this was prejudicial error.

Self-defense is a complete defense to the crimes of murder and attempted murder. (*People v. Elmore* (2014) 59 Cal.4th 121, 133-135.)  To establish self-defense, the defendant must have "actually and reasonably believed that the individual killed [or attempted to be killed] intended to commit a forcible and atrocious crime and that there was imminent danger of that crime being accomplished.  A person may act upon appearances whether the danger is real or merely apparent."  (CALJIC No. 5.13.) Imperfect self-defense is the killing or attempted killing of another person under the actual but unreasonable belief that the defendant was in imminent danger of death or great bodily injury.  (*People v. Booker* (2011) 51 Cal.4th 141, 182.)  Imperfect self-defense does not exculpate the defendant; rather, it negates the malice required for murder and makes the resulting crime a voluntary manslaughter or attempted voluntary manslaughter.  (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

A trial court has a duty to instruct the jury on self-defense or imperfect self-defense only when there is substantial evidence to support giving such an instruction. (*People v. Crew* (2003) 31 Cal.4th 822, 835 (*Crew*); *In re Christian S.* (1994) 7 Cal.4th 768, 783.) Substantial evidence is not mere speculation (*People v. Sakarias* (2000) 22 Cal.4th 596, 620); it is "evidence of reasonable, credible value" (*Crew*, at p. 835) that a reasonable jury could find persuasive.  (*People v. Valdez* (2004) 32 Cal.4th 73, 116.)

Defendant's self-defense theory was based primarily on statements he made to detectives following his arrest.  Defendant told the detectives that he and Sac returned home and argued, that Sac kicked him in the face, and that defendant then retrieved a knife from the kitchen and stabbed Sac.  Defendant claims his version of the incident -- that Sac kicked him in the face *inside* their apartment, and that defendant thereafter retrieved a knife from the kitchen -- is corroborated by Sac's testimony and the testimony of Sac's brother Manuel.  The testimony of these witnesses does not support defendant's version of the incident or his theory of self-defense.  Sac initially testified that "as soon as [defendant] arrived to the kitchen, he took out a knife."  He later clarified, however, that he never saw defendant enter the kitchen, but that his brother Manuel, who was in the apartment at the time, saw defendant enter and remove a knife from the kitchen.  Manuel

4

initially testified that at approximately 1:00 a.m. on the night of the crime, he saw defendant run into the apartment and retrieve a knife that Manuel recognized as one kept in the kitchen. Manuel subsequently admitted, however, that he never saw defendant enter the two-room apartment on the night of the crime because he was in an adjacent room visiting with friends.

Defendant's version of events is also contradicted by substantial evidence to the contrary. Sac testified that the attack occurred on the street outside approximately 45 feet away from their apartment building, and that defendant sprang out at him from between parked cars and said "I'm going to kill you." Sac also testified that he attempted to flee, but that defendant pursued him and stabbed him. Responding police officers found Sac lying on the sidewalk in a pool of blood. Sac's brother Manuel testified that he found Sac on the street outside the apartment building. Although defendant claimed Sac kicked him in the face, the detectives who interviewed defendant after the attack saw no bruises or injuries on defendant's face.

Even assuming a jury could find defendant's claim that Sac kicked him in the face in the apartment before the attack, the evidence does not support defendant's self-defense claim. Self-defense requires both an honest and reasonable belief in imminent peril. (*People v. De Leon* (1992) 10 Cal.App.4th 815, 824.) Defendant attacked Sac with a knife and pitchfork outside the apartment. There was no evidence that Sac was armed when defendant attacked him. Substantial evidence does not support defendant's claim that he believed he was in imminent danger of death or great bodily injury. (*In re Christian S., supra*, 7 Cal.4th at p. 771.) Although doubts as to the sufficiency of the evidence to warrant jury instructions should be resolved in favor of the defendant (*People v. Tufunga* (1999) 21 Cal.4th 935, 944), the trial court was not required to instruct the jury on self-defense based on the evidence presented.

## II. Admission of weapons into evidence

Before the trial, defense counsel objected to the prosecutor's introduction of the knife and pitchfork used against Sac and asked that the prosecutor be limited to photographs of the weapons. The trial court overruled the objection, noting that seeing

the weapons themselves would "help give the jurors some scale and what the item is all about." The trial court further concluded that seeing the actual weapons was not significantly more prejudicial than seeing a photograph of the bloody instruments. Defendant contends the trial court's ruling was an abuse of discretion under Evidence Code section 352.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) We cannot disturb the trial court's exercise of discretion under Evidence Code section 352 unless "'the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citations.]" (*Rodrigues*, at pp. 1124-1125, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316.)

The trial court's ruling was not arbitrary or capricious, nor did it result in a manifest miscarriage of justice. The record shows that the trial court weighed the probative value of the weapons against their potentially prejudicial effect. The court concluded that seeing the weapons would give the jurors a better sense of their size and scale as probative evidence of defendant's intent. One of the weapons, a kitchen pitchfork, was unusual. The trial court determined that viewing that instrument would allow the jurors to see "what the item is all about." Finally, the court concluded that seeing the weapons themselves was not more prejudicial than viewing photographs of the blood-covered weapons taken shortly after the crime. Admitting the weapons into evidence was not an abuse of discretion.

6

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

7